[Crim. No. 5950. In Bank. Nov. 23, 1956.]

THE PEOPLE, Respondent, v. JAMES HARLAN ROBERTS, Appellant.

William John Scammon for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Defendant appeals from a judgment of conviction entered on a verdict of guilty of second degree burglary and from the order denying his motion for a new trial.

About 10 p. m. on August 5, 1955, a police officer observed defendant standing in front of the display window of the Wollmer Music Company in Burlingame. He saw defendant get in an automobile and drive away, and he noted the license number of the car. The next night the music company was burglarized, and merchandise including five table model radios was taken.

Burlingame officers learned that the car defendant had been seen driving was registered to Margaret Higgins, 771 Turk Street, San Francisco, and two of them went to that address in the morning of August 8th with a San Francisco police officer. They were informed that Margaret Higgins had moved to an apartment house, at 761 Turk Street, and they went there and interviewed the manager. She told them that Mrs. Higgins lived there, that a man, later identified as defendant, also lived in the same apartment and that he had not worked often and was sickly.

The officers went to the apartment and knocked on the door but received no response. They heard several moans or groans that sounded as if a person in the apartment were in distress, and the manager let them into the apartment at their request. They looked in the bedroom, bathroom and kitchen for the person they thought had made the sounds. No one was there. One of the officers, noticing a table model radio in the kitchen that "stood right out as being a new radio," picked it up, turned it over, and noted the serial number. The officers were not in the apartment more than two·or three minutes. After leaving they ascertained that the serial number of the radio in the apartment was the same as that of one of the radios reported stolen. On the basis of this information a search warrant was obtained, and the officers returned later in the day, served the warrant on Mrs. Higgins and seized the radio. She testified that defendant had given her the radio the day after the burglary.

Defendant contends that the information upon which the search warrant was obtained was the product of an illegal search of the apartment and that the radio should therefore have been excluded from evidence. ■ It is, of course, settled that if the conduct of the officers in entering or searching was unlawful, the search warrant subsequently obtained based on their observation in the apartment was invalid. (See *Silverthorne Lbr. Co.* v. *United States,* 251 U.S. 385, 392 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426] ; *People* v. *Berger,* 44 Cal.2d 459, 462 [282 P.2d 509].)

■ The entry of the officers cannot be justified on the ground that they reasonably believed in good faith that the manager had authority to consent thereto. The situation here is entirely unlike that in *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469], and *People* v. *Caritativo,* 46 Cal.2d 68 [292 P.2d 513]. In both of those cases the premises searched were part of a private home, it was unclear whether the defendant was a guest, tenant or servant, and the officers had the consent of the owner who purported to have authority to authorize the search. In the present case Mrs. Higgins was a tenant of an apartment, and there is no evidence that the officers had reason to believe that the manager had authority to consent to their entry. The manager testified that she had neither authority nor permission from Mrs. Higgins to enter her apartment, and in admitting the officers she acted solely at their request on the assumption that they were entitled to enter. ■ Moreover, although the burden is on the prosecution when it seeks to justify an entry on the ground that the officers reasonably believed in good faith that they had the consent of an authorized person (*People* v. *Gorg, supra,* 45 Cal.2d 776, 782), no attempt was made to establish such a belief, and it is clear from the record that the trial court did not base its decision on that ground.

The trial court found that the officers reasonably believed that someone inside the apartment was in distress and in need of assistance and that they entered for the purpose of giving aid. ■ Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose. (*Ploof* v. *Putnam,* 81 Vt. 471 [71 A. 188, 189, 130 Am. St.Rep. 1072, 15 Ann.Cas. 1151, 20 L.R.A.N.S. 152] ; *Metallic Compression Casting Co.* v. *Fitchburg R. Co.,* 109 Mass. 277, 280-281 [12 Am.Rep. 689] ; see Rest., Torts, § 197 ; Prosser on

Torts [2d ed.], 84, 97.) The trial judge was fully aware that an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid. (See *Gouled* v. *United States*, 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647]; *Fraternal Order of Eagles* v. *United States*, 57 F.2d 93.) He stated, "I recognize that this opens the way to subterfuge, and I think it rests with the trier of fact to see to it that . . . no subterfuge creeps in, but I don't think I am justified in making that finding here. . . . I think [the officers] were telling the truth and I so find. . . ."

■ Defendant contends that the evidence is insufficient to support a finding that the officers had reasonable cause to enter the apartment. The officers were informed that the man who was living in the apartment with Mrs. Higgins had not worked lately and that he was sickly. After they knocked on the door they heard moaning sounds as if a person inside the apartment was in distress. Unless the testimony of the officers is rejected, the evidence is clearly sufficient. Defendant argues, however, that their testimony is too improbable to be believed. He calls attention to the fact that no one was found in the room and points out that one of the officers when asked on cross-examination to give his present opinion as to where the sounds might have come from said, "Well, it could be pigeons, pigeons moan. There are pigeons in that area." Defendant asserts that a competent police officer could not honestly confuse the sound of a moaning pigeon with that of a person in distress. The witness, however, was only giving his opinion as to a possible source of the sounds the officers heard, and moreover we cannot say that it is impossible in any circumstances to confuse the moan of a pigeon with that of a human being. The trial court was not required to reject the testimony of the officers as being unworthy of belief.

■ The privilege to enter to render aid does not, of course, justify a search of the premises for some other purpose. ■ An arrest may not be used as a pretext to conduct a general search of one's premises for incriminating evidence, and it has been repeatedly said that where the right to conduct a search is obtained ostensibly for one purpose it may not be used in reality for another. (See *Harris* v. *United States*, 331 U.S. 145, 153 [67 S.Ct. 1098, 91 L.Ed. 1399]; *Love* v. *United States*, 170 F.2d 32, 33.) ■ Thus the officers in the present case could properly make only that kind of search reasonably necessary to determine whether a person was

actually in distress somewhere in the apartment. They could not, for example, ransack the premises or rummage through desk drawers. On the other hand, in the course of conducting a reasonable search they did not have to blind themselves to what was in plain sight simply because it was disconnected with the purpose for which they entered. (*Love* v. *United States,* 170 F.2d 32 [officers entered the defendant's house lawfully for purpose of searching for another man; in course of search they discovered a distillery in operation]; *Paper* v. *United States,* 53 F.2d 184 [officers entered lawfully for purpose of finding and arresting defendant on one charge; in searching for defendant they discovered an illegal supply of liquor, constituting another offense, in the basement].) The court in the Paper case said, ''Where the entry and search are rightful and there is present no element of trespass or fraudulent invasion of the rights of the citizens, there is no reason for excluding evidence of crime discovered in the course of the search. If the officers . . . had discovered in the cellar a counterfeiting plant in operation, would it have been their duty to ignore it? If they had come upon the body of a murdered man, would their testimony as to finding the body be excluded?'' (*Paper* v. *United States,* 53 F.2d 184-185.)

In formulating the rules governing lawful searches and seizures the United States Supreme Court has repeatedly recognized the distinction between the seizure of evidence which was readily visible and accessible to the officers and that which was uncovered only after a general, unreasonable ransacking of the premises. (See *United States* v. *Lefkowitz,* 285 U.S. 452 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775]; *Go-Bart Co.* v. *United States,* 282 U.S. 344 [51 S.Ct. 153, 75 L.Ed. 374]; *cf. Harris* v. *United States,* 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399], where an intensive search was held reasonable under the circumstances.) The decisions also make a sharp distinction between the seizure of property which is stolen or contraband and property which is inoffending of itself and merely evidentiary. (*Harris* v. *United States,* 331 U.S. 145, 154 [67 S.Ct. 1098, 91 L.Ed. 1399]; *United States* v. *Lefkowitz,* 285 U.S. 452, 465 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775]; *Weeks* v. *United States,* 232 U.S. 383, 392-393 [34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B 834]; *Gouled* v. *United States,* 255 U.S. 298, 309-310 [41 S.Ct. 261, 65 L.Ed. 647]; *Boyd* v. *United States,* 116 U.S. 616, 623 [6 S.Ct. 524, 29 L.Ed. 746].)

Applying these principles and distinctions to the facts of the present case we are satisfied that the officers did not act unreasonably or in violation of defendant's constitutional rights. The trial court found on substantial evidence that the entry was lawful for the purpose of rendering aid, hence the officers were justified in entering each room of the apartment to look for someone in distress. The radio was in plain sight, and it fitted the general description of property known by the officers to be stolen. Under the circumstances, there appears to be no reason in law or common sense why one of the officers could not pick up the radio and examine it for the purpose of dispelling or confirming his suspicions. The fact that abuses sometimes occur during the course of criminal investigations should not give a sinister coloration to procedures which are basically reasonable.

The judgment and order denying a new trial are affirmed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.