### STATE v. CUMMINGS.
No. 5778.

Circuit Court, Dade County, Criminal Appeal.

December 21, 1965 and January 4, 1966.

Irwin S. Gars and Robert Dixon, both of Miami, for appellant.

Richard E. Gerstein, State Attorney, Joseph Durant, Assistant State Attorney, for appellee.

HENRY L. BALABAN, Circuit Judge.

*Opinion and order, December 21, 1965:* The appellant was tried on an information charging him with aiding or assisting in setting up or promoting a lottery, a felony; and with possession of lottery paraphernalia, a misdemeanor. The trial court found the appellant innnocent under the first count of the information, but adjudicated him guilty on the second count. Imposition of sentence was suspended due to the unusual circumstances of the case and appellant was placed on probation for a term of two years.

The testimony before the trial court was basically as follows —

On December 4, 1964 appellant was sitting on a couch in his living room, his wife was nearby. Suddenly an armed robber entered his home, with pistol drawn. He was told not to move; then, as the robber turned, he rose from the couch. At that moment, a second robber pulled open the front door and shot him in the back. Neither appellant nor his wife called the police.

At approximately 8:13 P.M. Officers Rock and Dengler arrived. They entered through a screened door which apparently was held open by one of the spectators; the door was not held open by appellant or his wife; nor did they give the officers permission to enter their home. Once inside, the officers found appellant lying on the couch, with blood all around.

At 8:30 P.M. Sgt. Green arrived. A crowd had gathered, the front door was open. No permission for Sgt. Green's entry was given, he just walked in. Appellant was still on the couch. There were eight to nine unknown persons in the living room. Sgt. Green had no knowledge as to who these people were, what they had on them, or what parts of the home they had been in. Acting on information that "these robbers generally rob lottery houses", Sgt. Green conducted a search of the home, without permission.

Appellant was being placed in an ambulance when Sgt. Kimbro arrived. Sgt. Green took Sgt. Kimbro to a bedroom in the appellant's home and showed him lottery paraphernalia in a dresser drawer, set back in a closet covered by a curtain.

At 8:31 P.M. Officer Kennedy, of the crime lab, arrived. Appellant had been removed to a hospital and Sgt. Kimbro had left the premises. Officer Kennedy opened the door and entered the home. No one told Kennedy in which room the shot had been fired, nor did he ask. He had no information as to the shooting, although he did realize someone had been shot. He had no knowledge whether the projectile had entered and remained in the victim's body or whether it made an exit. Although the other officers and appellant's wife were present, Kennedy did not ascertain the facts from these people.

Without obtaining permission, Officer Kennedy started a search of appellant's home, allegedly looking for a projectile. This search brought Kennedy to a bedroom where he "pushed aside the curtain to the closet" and observed a dresser, its top drawer open where he found three manila envelopes. Inside he could see money and three or four bolita tickets.

The appellant raised three points before this court. First, as to the running of the statute of limitations; second, the insufficiency of the evidence; and third, on illegal search and seizure. Because the court must sustain the appellant as to point three on the basis of an illegal search and seizure, it is unnecessary to rule on the first two points.

The appellate courts of this state have often remarked upon the procedure to be followed if a search and seizure is to be performed that does not violate the positive guaranty in section 22 of the Declaration of Rights of the Florida constitution. There seems to be no need to comment on the matter again here, especially as the actions of the officers detailed in this record bear small resemblance to a legal search.

Neither the appellant nor his wife called the police; nor did they invite, consent or give permission to the officers' entrance into their home. There was no search warrant or warrant for appellant's arrest. Neither appellant nor his wife gave consent or permission to a search of their home. The search of this abode was made while appellant was en route to a hospital. The appellant not only was not there to consent; he did not even have knowledge that a search was made of his home prior to his arrest. The search in the case at bar was made prior to appellant's arrest.

The state attorney seems to have relied on the fact that the appellant was a victim of a bullet from the gun of an armed robber as a reason for dispensing with the need for a search warrant — but this circumstance did not constitute "carte

blanche" to the officers to look wherever they chose on appellant's property.

This court is not unmindful of the postulate that once the officers are legally on the premises, they may act on anything in plain sight. But the record in the case at bar incontrovertibly establishes that the evidence found was not in plain sight. The officers had to first push aside a curtain covering the closet before they could observe a dresser with its top drawer open, revealing what is alleged to be lottery paraphernalia.

In formulating the rules governing lawful searches and seizures, the United States Supreme Court has repeatedly recognized a distinction between the seizure of evidence which was readily visible and accessible to officers and that which was uncovered only after a general unreasonable ransacking of the premises. People v. Roberts, 303 P.2d 721 (S. Ct. Calif. 1956).

Moreover, the testimony of the officers as to the reason for the search, to-wit, "searching for a projectile", is too improbable to be believed. Especially, in view of an officer's testimony that he had no knowledge "whether the projectile had entered and remained in the victim's body or whether it made an exit".

After studying the transcript of testimony, it is apparent the officers were searching for what they found. Sgt. Green was advised on the scene that — "these robbers usually rob lottery houses". The facts belie the testimony that the search was incident to a criminal investigation for armed robbery. After Sgt. Green received this information from an informant, there was no reason why a search warrant could not have been obtained — no one was leaving the premises and the officers were in control.

The privilege to enter to render aid does not, of course, justify a search of the premises for some other purpose; and it has been repeatedly said that where the right to conduct a search is obtained ostensibly for one purpose, it may not be used in reality for another. People v. Roberts, supra; Harris v. U.S., 331 U.S. 145, 153, 67 S. Ct. 1098, 91 L. Ed. 1399; Love v. U.S., 4th Cir., 170 F. 2d 32, 33. There is a strong indication that the search for a "projectile" was a mere pretext to search for the lottery, and, if so, was a violation of the constitutional rights of the appellant. Veal v. Commonwealth, 251 S. W. 648.

The arrest of the appellant was made subsequent to the search at his home, so the search could not have been made in connection with or incident to the arrest. United States v. McCann,

40 F. 2d 295 (N.Y. 1930); Rivers v. State, 59 So.2d 740 (Fla. 1952). There was no contention that the officers observed the appellant committing a crime or that they had a warrant for his arrest when the abortive search was made.

And, finally, there is no indication whatever in the record that the appellant ever intended to waive his protection under section 22 of the Declaration of Rights of the Florida constitution and the fourth amendment of the United States constitution.

All this demonstrates to the court that the conviction was invalid, and the judgment of the lower court is reversed. The court retains jurisdiction for the purpose of assessing and taxing costs.

*Order, January 4, 1966:* This cause having come on to be heard on the motion of the appellant to tax costs; and the court finding that the appellant has incurred $358.50 in costs; and upon finding that these costs are proper, and being advised that counsel for the appellee has stipulated as to the costs set forth in the motion; and being otherwise fully advised in the premises, it is ordered and adjudged that the appellant's motion is hereby granted; and that the costs are assessed against the appellee, the state of Florida, in the amount of $358.50, said costs to be paid forthwith by the appellee.