[Crim. No. 12654.   Second Dist., Div. Two.   Dec. 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. HUBERT ARTHUR ROMAN, Defendant and Appellant.

Hubert Arthur Roman, in pro. per., and Giblert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Hubert Arthur Roman appeals a judgment of conviction for second degree murder, assault with a deadly weapon on a police officer engaged in the performance of his duty, and felony child-beating.

On 3 November 1965, Officer Richard Tapia of the Santa Monica Police Department went to Roman's apartment house in response to a child-beating complaint, and was informed by a resident of the building that she believed the children in Roman's apartment were being beaten. On a previous occasion Officer Tapia had investigated a similar complaint against Roman, and he had once accompanied Mrs. Roman to the apartment to pick up the children after the Romans had quarrelled.

After talking to Roman's neighbor, Tapia went to Roman's apartment and knocked on the open door, which then opened wider and disclosed an apparently unconscious child on the floor. Roman was seated in a chair in the living room. Tapia entered the apartment and examined the child and found welts on the back of its neck and blood in its nostrils. He placed Roman under arrest and called for his sergeant, while Roman attempted to call the FBI for information about his rights.

About the time Sergeant Ronald Wise arrived, Tapia and Roman began to struggle. Wise sent Tapia to call for further assistance. When Tapia returned, Roman had a revolver in his hand and was pointing it at Wise. Wise shouted to Tapia to leave, and as the latter did so Roman fired two shots at him, which missed. Tapia again returned to the apartment, was again told to leave by Wise, and was again fired upon by Roman without effect. When Tapia returned for the third time, he saw Roman shoot Sergeant Wise in the stomach. Roman surrendered to the Santa Monica police after he was wounded in an exchange of gunfire.

Wise died early the next morning. That same morning Roman was questioned by a Santa Monica detective who knew that Wise was dead. The detective advised Roman of his right to remain silent and his right to have a lawyer present, and told him that anything he said could be used against him in court. Roman said he shot Wise accidentally but that he had planned to evict the police "by any means necessary, even [to] shoot them."

1. Roman contends that Officer Tapia's entry into his apartment was unlawful, that the shooting of Sergeant Wise took place in the course of Roman's resistance to this unlawful invasion of his privacy, and that consequently the shooting resulted from provocation and amounted at most to manslaughter. A related contention is that the trial court erred in instructing the jury as a matter of law that Tapia's entry was proper.

A peace officer may arrest without a warrant "[w]henever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." (Pen. Code, § 836, subd. 3.) Child beating likely to produce great bodily harm or death is a felony. (Pen. Code, § 273a, subd. (1).) When Officer Tapia went to Roman's door, he was investigating a complaint of such an offense. On a prior occasion he had observed one of the Roman boys with a black eye and been told by the child that his father had hit him. Before he entered the apartment this time he saw Brian Roman, two years old, "seated on the floor, his head down and his arms back . . . He appeared unconscious." His entry into the apartment was justified by what he had seen. "Necessity often justifies an action which would otherwise constitute trespass, as where the act is prompted by the motive of preserving life . . ." (*People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721].)

On entering the apartment Officer Tapia examined the child and noticed that "It had welts . . . on the back of its neck . . . They appeared to be recent." He also observed blood around the child's nose. He "asked the child if its dad had hit him, and he sobbed yes." Officer Tapia then had reasonable cause to arrest Roman. Appellant's arguments to the contrary are based on the mistaken assumption that the officer was not entitled to take into account what he had seen through Roman's open door and follow it up. But, clearly, a police officer investigating a complaint is not required to disregard what is apparent to any passerby. Having come to

the conclusion that the child had been severely beaten and that Roman had done the beating, the officer was justified in making an arrest. The later medical examination of the child's condition did not alter the reasonableness of the officer's conclusion made at the scene. In cases of suspected child-beating we prefer the police to consider any apparent injuries as serious ones until they have satisfied themselves to the contrary.

■ Even if we assume, contrary to the evidence, that the conduct of Officer Tapia was unlawful, his conduct did not furnish provocation sufficient to excuse Roman's killing of Sergeant Wise as manslaughter. Penal Code, section 834a, adopted in 1957, makes it the duty of any person arrested by a peace officer to refrain from the use of force to resist an arrest. Necessarily, the section removes unlawful arrest by a peace officer from the list of factors capable of furnishing sufficient provocation to reduce murder to manslaughter.

■ Finally, apart from Roman's statement that he intended to evict the police by any means necessary, even shooting, there was positive evidence that Roman acted with malice. He ordered Sergeant Wise to remove his gun belt, and when Wise said, ''You wouldn't shoot an unarmed man, would you?'' shot him.

■ The court properly instructed the jury as a matter of law that reasonable cause to make the arrest existed. Indeed no other course was feasible since much of the evidence on reasonable cause had been heard outside the presence of the jury in order to avoid prejudice against Roman. (*People* v. *Gorg*, 45 Cal.2d 776, 778-781 [291 P.2d 469].)

■ 2. Appellant next contends that his statement at the hospital the morning after the shooting was inadmissible because his interrogator failed to inform him of Wise's death until the end of the interview. He argues that had he known of his victim's death, he might not have waived his right to counsel, that his waiver was therefore ineffective because it was not a knowledgeable one. However, this is not the case of a suspect without knowledge that serious charges were likely to be filed against him. Since Roman had shot one officer at close range, had fired several times at another, and had engaged in a gun battle with still others, he must have known it was a virtual certainty that substantial charges would be brought against him. Under such circumstances the police are not required to disclose to a suspect all relevant information known to them at the time they question him, nor are they

required to express an opinion of the charges apt to be filed against a suspect after his victim's condition has worsened. (*People* v. *Lara,* 67 Cal.2d 365, 375-376 [62 Cal.Rptr. 586, 432 P.2d 202].) Since the requirements of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] were satisfied, the statements were admissible.

3. Appellant finally contends the court erred in failing to instruct the jury on the misdemeanor provision of section 273a, Penal Code, at the time it instructed on the felony provision of that section, even though no instruction on the misdemeanor provision had been requested by appellant at the trial. Section 273a reads: "(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering . . . is [guilty of a felony].

"(2) Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering . . . is guilty of a misdemeanor."

In support of the felony charge the prosecution introduced the observations of Officer Tapia and of a neighbor on the appearance of the child, photographs of the child taken after its father had been subdued, and the testimony of a doctor who examined the child on the evening of the shooting. This evidence established that the child had blood around its nostrils, red marks on its face, neck, back, legs, and arms, discoloration on one arm, apparently as the result of blows, but that it had not sustained any serious injury requiring medical treatment.

In opposition, the defense presented Roman's testimony that he had spanked the child with his belt, striking it five or six times, that he had not hit the child on the head or face, that the child had not had a bloody nose, that he had not seen any marks on the child's face, and that the child always cried after it had been spanked.

From this evidence the jury could have concluded, either that the beating had been one likely to produce great bodily harm and hence a felony, or that it had been a beating under other circumstances and hence a misdemeanor. Had the jury believed Roman's testimony as to the mildness of the beating and had it received instructions on the misdemeanor provi-

sion, it might possibly have convicted Roman of misdemeanor rather than felony child-beating.

Accordingly, we think it erroneous for the court not to have instructed the jury on the misdemeanor provision of section 273a, even though the defendant failed to ask for such an instruction. Here there was ''evidence which, if accepted by the trier of fact, would absolve defendant from guilt of the greater offense or degree, although it would support a finding that he was guilty of a crime of lesser degree or of a lesser and included offense. It is now settled that, in this situation, an instruction on the lesser offense or degree must be given, even though not requested, and no matter how unlikely it may appear that any verdict other than one of guilty of the higher offense or degree would be returned. [Citations omitted.]'' (*People* v. *Morrison,* 228 Cal.App.2d 707, 712 [39 Cal.Rptr. 874].) Roman's testimony raised the issue of the severity of the beating, and the jury should have passed on that issue.

A similar problem was presented in *People* v. *Roth,* 228 Cal.App.2d 522 [39 Cal.Rptr. 582], where the trial court failed to instruct on simple assault, a misdemeanor, but did instruct on felony assault by means of force likely to produce great bodily harm. This was erroneous, because ''it was purely a matter of inference whether the assault was of the severity contemplated by [the felony or the misdemeanor sections].'' (228 Cal.App.2d at p. 531. See also, *People* v. *Burns,* 88 Cal.App.2d 867 [200 P.2d 134].)

However in view of the substantiality of the sentences obtained by the prosecution on the other counts, the error here bulks small in the case as a whole, and we think it may be simply remedied by conceding to appellant all benefit of the doubt and reducing his conviction for felony child-beating to the lesser-included offense of child-beating under circumstances other than those likely to produce great bodily harm or death.

The judgment of conviction of felony child-beating under section 273a is reduced to misdemeanor child-beating, and sentence on that count is suspended. In other respects the judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 31, 1968.