[Crim. No. 9019. First Dist., Div. One. July 23, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH CHRISTIAN HENNING, Defendant and Appellant.

## COUNSEL

William E. Bennett, under appointment by the Court of Appeal, and Tunney, Carlyle & Bennett for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant-appellant Kenneth Christian Henning moved the superior court, under Penal Code section 1538.5, to suppress certain evidence of narcotics and dangerous drugs found by a police officer in a hotel room occupied by him. The evidence was essential to Henning's conviction on pending charges. Following denial of the motion, the cause was submitted for decision on the evidence disclosed in the transcript of his preliminary examination. He was thereafter found guilty of violating Health and Safety Code sections 11530 and 11910, and Business and Professions Code section 4143. The appeal is from an order granting him probation which was thereafter entered.

The question presented is whether there was any substantial evidence[1] supporting the superior court's determination of no Fourth Amendment violation. (*People* v. *Stout*, 66 Cal.2d 184, 192 [57 Cal.Rptr. 152, 424 P.2d 704]; *Bergeron* v. *Superior Court*, 2 Cal.App.3d 433, 436 [82 Cal.Rptr. 711].) If so, even though contrary inferences might be drawn from the evidence, and we ourselves might draw them, we are nevertheless bound by the findings of the superior court.

It must be conceded that an inference could be drawn that the police officer entered Henning's room either to make an unauthorized arrest or an unauthorized search. But it is contended that another reasonable inference could be, and was, properly drawn by the court that the officer acted only in aid of the hotel management late at night to quell a disturbance, a loud radio, in the room.

We therefore direct our inquiry to that portion of the evidence, and reasonable inferences drawable therefrom, which tend to support the conclusion of the trial judge.

Sometime after 10 p.m. (the curfew hour), on the evening of December 25, 1969, the desk clerk of Hillside Inn called the police department asking assistance concerning a disturbance in one of its rooms. An officer responded. He was told that a guest had complained about a disturbance at room 109 where a group of juveniles and adults were pounding on the door demanding admittance. The officer and a hotel employee went to the room. No one was then present in the outside hall, but inside "a

---

[1]The "substantial evidence rule" is stated by *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805], as follows: "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]"

very loud radio" was turned on. The officer knocked on the door repeatedly and called the name of defendant Henning to whom the room was registered. There was no response whatever, and there was no diminution of the radio's sound output. At the officer's request the hotel employee unlocked the door. The officer again knocked on the door with a similar lack of response within. The door was then pushed slightly ajar. The officer testified, "At that time I could see in and I could see the lower half of a male's body extended in a prone position over the end of the bed fully clothed." The man was lying face down. Fearful that the man was in trouble, the officer entered to "check on his welfare." Upon the entry, in plain sight on the floor, on a table, and protruding from the prone man's pocket, the officer saw, and recognized the nature of, a portion of the narcotics and dangerous drugs which were later the subject of Henning's motion to suppress. The man partially on the bed was Henning, who appeared to be in a deep sleep.

■ From this evidence it could reasonably be concluded that the officer entered Henning's room with consent of the hotel employee; that the initial purpose of the entry was to silence a loud radio which was annoying the hotel's guests; and that upon seeing Henning prone and in an unusual position on the bed an additional purpose developed—concern for the man's safety. It may clearly be inferred that the officer at no time prior to the entry had a purpose to arrest anyone or to search the room. And he may reasonably be considered as an agent of the hotelman, who understandably did not wish unattended, to risk a hostile confrontation in silencing a source of annoyance to the hotel's guests.

We have no hesitancy in concluding that a hotel keeper himself may enter a rented, but presently unoccupied, room when *reasonably necessary* to quiet a "very loud radio" which is presenting a substantial annoyance to other guests. Indeed, it has been held that an innkeeper is under an obligation not to harbor persons "dangerous to the peace and comfort of those for whose comfort he is bound to provide" (*Rahmel* v. *Lehndorff,* 142 Cal. 681, 685 [76 P. 659]), to protect his patrons from "annoyance" (*Kingen* v. *Weyant,* 148 Cal.App.2d 656, 661 [307 P.2d 369]), and to exercise proper care for the safety and tranquility of the guest (40 Am.Jur.2d, Hotels, Motels, etc., § 56, p. 938).

It seems most reasonable for the hotel people to have called upon a police officer for assistance, rather than risk violence in pursuit of their duty of care for the nighttime comfort, tranquility and quiet of their guests. If so, then it was equally reasonable for the police officer, on request and with their consent and under the facts before us, to assist in such an undertaking.

The additional purpose of the officer, upon observing the condition of

Henning within the room, was clearly without Fourth Amendment or other fault. Reason tells us, and valid authority holds, that an entry is proper when a police officer reasonably and in good faith believes such entry to be necessary in order to render aid to a person in distress. (*People* v. *Roberts,* 47 Cal.2d 374, 377-378 [303 P.2d 721]; *People* v. *Clark,* 262 Cal.App.2d 471, 475-476 [68 Cal.Rptr. 713], and see authority there cited; *People* v. *Roman,* 256 Cal.App.2d 656, 659 [64 Cal.Rptr. 268].)

Having entered Henning's room for such purposes the police officer was not required "to blind [himself] to what was in plain sight simply because it was disconnected with the purpose for which [he] entered." (*People* v. *Roberts, supra,* 47 Cal.2d 374, 379.)

It is said that "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances . . . and on the total atmosphere of the case. . . ." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) Applying this principle, and in the absence of more specific countervailing authority, we must conclude that there was substantial evidence in support of the superior court's order denying Henning's motion to suppress evidence.

The order granting probation is affirmed.

Molinari, P. J., and Sims, J., concurred.