607 P.2d 19

The STATE of Arizona, Appellant,

v.

Robert Ray WRIGHT, Appellee.

No. 2 CA–CR 1799.

Court of Appeals of Arizona,
Division 2.

Dec. 19, 1979.

Rehearing Denied Feb. 6, 1980.

Review Denied Feb. 26, 1980.

Stephen D. Neely, Pima County Atty. by D. Jesse Smith, Deputy County Atty., Tucson, for appellant.

Richard S. Oseran, Pima County Public Defender by Allen G. Minker, Asst. Public Defender, Tucson, for appellee.

## OPINION

HOWARD, Judge.

This is an appeal by the state from an order granting a motion to suppress evi-

dence. The state contends that the trial court erred in concluding that there were no exigent circumstances which would have allowed the police officers to enter the defendant's motel room. We agree.

The testimony of Officers Hernandez and Cochran of the Tucson Police Department was as follows. On December 12, 1978, Officers Hernandez and Cochran went to the Sun Valley Motel in Tucson, Arizona in response to a report of a disturbance. When they arrived they found two persons, Mr. Asaro and Mr. Andrews outside of Room 208. They told the officers that they had been trying to rouse their friend in the room because they wanted to obtain some property from him that they had left earlier that evening. They stated that they had pounded on the door several times and knocked on the window but had been unable to rouse the occupant. They also told the officers that they had been drinking beer earlier in the evening with their friend who had drunk quite a bit. Officer Hernandez went to get the key to the room. In the meantime, Officer Cochran talked with the occupant of Room 209 who had called in the complaint about the noise. He told Officer Cochran that Asaro and Andrews had been pounding on the door for about 15 minutes and their voices became loud. They had awakened him from a sound sleep.

When Officer Hernandez returned to the room with a key, the officers tried to look in the window but were unable to see inside because the curtains were drawn. They also noticed that no sound was coming from the room. They knocked on the door for about two or three minutes and then used the key to enter. They did so because they believed that appellee may have lapsed into unconsciousness from his drinking of intoxicating beverages. The officers found defendant lying face down on the bed unconscious. His pulse was weak and attempts at shaking and yelling failed to arouse him from his state of unconsciousness. A paramedic unit was called and it arrived within seven minutes. The paramedics failed to

revive defendant by physically shaking him and yelling at him but after several ammonia capsules were broken under his nose, he finally regained partial consciousness and was removed in an ambulance to a hospital. On the table in the motel room, in plain view, were open pill bottles that were the subject of the motion to suppress.

The only witness at the suppression hearing was Asaro. In relation to what the officers saw and heard,[1] his testimony did not contradict theirs except that he stated that he could see defendant lying face up. He never denied that he told the officers that defendant had drunk quite a bit.

Among the well established legitimate reasons for a police officer to be present on privately occupied premises is in response to an emergency. *State v. Jones*, 2 Kan.App. 38, 573 P.2d 1134 (1978). Necessity often justifies action which would otherwise constitute a trespass, as where the act is prompted by the motive of preservation of life and property and reasonably appears to the actor to be necessary for that purpose. *People v. Roberts*, 47 Cal.2d 374, 303 P.2d 721 (1956). An entry into a motel room is proper when a police officer reasonably and in good faith believes it necessary in order to render aid to a person in distress. *Root v. Gauper*, 438 F.2d 361 (8th Cir. 1971); *People v. Henning*, 18 Cal. App.3d 872, 96 Cal.Rptr. 294 (1971).

In applying the emergency doctrine, two principles must be kept in mind. (1) Since the doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. (2) An objective standard as to the reasonableness of the officer's belief must be applied. *Root v. Gauper*, supra. Application of this objective standard to the situation here clearly demonstrates that the facts available to the officers at the moment they entered the room would have warranted a man of reasonable caution in the belief that entry was appropriate.

1. This is the only evidence which is relevant, to-wit, what the officers saw and heard at the time.

While hindsight cannot be used to justify an otherwise unlawful entry, it demonstrates in this case just how right the officers were. When presented with facts such as existed here, police officers need not speculate or meditate or attempt to secure a warrant. Each passing second may mean the difference between life and death.

The denying or granting of a motion to suppress will not be reversed by us in the absence of a clear abuse of discretion. *State v. Dupuy*, 116 Ariz. 151, 568 P.2d 1049 (1977); *State v. Winters*, 27 Ariz.App. 508, 556 P.2d 809 (1976); *State v. Vandeveer*, 23 Ariz.App. 331, 533 P.2d 91 (1975). There was a clear abuse of discretion in this case. We are unable to find any evidence or lack of evidence which would warrant the trial court's conclusion that exigent circumstances did not exist.

The order granting the motion to suppress is set aside.

HATHAWAY, J., concurs.