[No. F002402. Fifth Dist. May 14, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY WALTER SHEFFIELD, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and IV.

## COUNSEL

Arthur R. Collins, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BROWN (G. A.), P. J.—A jury found appellant, Jerry Walter Sheffield, guilty of three counts of wife beating (Pen. Code,[1] § 273.5), two counts of felony child abuse (§ 273a, subd. (1)),[2] and of possession of a firearm by an ex-felon (§ 12021). On this appeal from the judgment, appellant urges reversal of the felony child abuse counts and the weapon possession count only, grounded upon alleged error in giving and failure to give certain jury instructions.

### FACTS

In September 1981 appellant moved in with a woman named Marilyn and her two children, Lindsey, age six, and R. D., age two. After living together for a few months, appellant and Marilyn were married on April 30, 1982. Between January 1982 and September 15, 1982, appellant beat Marilyn on several occasions. On the first occasion, he slapped her head, pulled out a handfull of hair, and ripped her nightgown off. On another occasion, Marilyn answered a phone call from appellant's brother who had run out of gas. Appellant's brother asked if someone could bring him some gas for his car. Marilyn said that she would do it and hung up. Appellant instantly accused Marilyn of running off to meet her lover and hit her in the face,

---

[1] All statutory references are to the Penal Code.

[2] It appears that the information, verdicts and abstract of judgment all refer to section 273, subdivision (a)(1), instead of section 273a, subdivision (1). There is no section 273, subdivision (a)(1). Section 273, subdivision (a), refers to paying to or receiving by a parent money for placement of or consent to adoption of a child—a subject totally foreign to the facts in the instant case. Appellant does not appear to have been misled and received adequate notice of the charge since the information refers to "did willfully, unlawfully and feloniously, under circumstances and conditions likely to produce great bodily harm and death, cause and permit . . ., a child, to suffer and did inflict upon said child unjustifiable physical pain and mental suffering, in violation of Section 273(a)(1) of the Penal Code."

This language was taken from section 273a, subdivision (1).

In the event of retrial, this error should be corrected by showing section 273a, subdivision (1), in all relevant documents.

breaking her nose. Appellant eventually calmed down and took his brother the gas.

When appellant returned, he and Marilyn had a conversation while leaning against the back of the couch. During the conversation, appellant was playing with a .22 caliber handgun. Appellant dropped the gun and it went off, hitting him in the foot.

On other occasions, appellant hit Marilyn with his fist, kicked her, stabbed her with a fork, hit her with a flyswatter, and caused a superficial cut on her neck with a butcher knife. On three separate occasions, appellant choked Marilyn until she lost consciousness.

The effects of appellant's beatings of Marilyn ranged from small cuts and bruises to large bruises and broken bones. (Her nose was fractured, as were three of her ribs.) In addition, Marilyn suffered a mild perforation of her eardrum which bled for a few months.

Between January and September 1982, Marilyn worked during the day as a legal secretary. Appellant stayed home and took care of the children. Lindsey was in kindergarten and would return home at approximately 11:30 a.m. each weekday. R. D., however, was with appellant all day.

When Marilyn would return home after work she would often find bruises on R. D.'s face, arms, legs, and bottom. Appellant would attempt to explain the bruises by saying that the dogs had knocked R. D. over or that he had fallen off the slide.

On other occasions, Marilyn actually witnessed appellant "discipline" R. D. Appellant would hit R. D. with his fist, slap him, or spank him with a belt or the arm of a chair. In addition, R. D. had a problem swallowing his food and would hold food in his mouth without swallowing it for long periods of time. This annoyed appellant, so he would stick his finger in R. D.'s mouth to try and force R. D. to swallow the food. When this failed, appellant would force R. D. to take a cold shower for 15 to 20 minutes while preventing R. D. from standing up in the shower. Usually, however, the result of such incidents would be R. D.'s gagging and vomiting.

Although not as frequently, appellant also "disciplined" Lindsey. Appellant would spank her with a belt, causing bruises. On one occasion, appellant cut Lindsey's head when he hit her with a crutch when she failed to respond to his instructions as he wanted her to.

On September 15, 1982, Marilyn finally decided that she had had enough and called the police. When Marilyn was escorted out of the house by the police, she left a .22 caliber pistol in a holster on her bedroom dresser.

After Marilyn left with the police, appellant got the pistol and took it with him when he left the house. Appellant drove away from the house in Marilyn's truck, and the truck was later spotted by the police in the parking lot of a restaurant. The police found appellant inside and arrested him. The gun was found on the floorboard of the truck.

### DEFENSE EVIDENCE

Appellant testified that although he and Marilyn had arguments he never hit her during these arguments. The only exception to this claim of non-violence on appellant's part was on one occasion when he admitted hitting her after she pulled a gun on him. According to appellant, Marilyn got upset when appellant told her that he was going to leave her. She went into the bedroom and got the .22 caliber pistol and pointed it at appellant. Appellant claims he kicked the gun out of her hand and it went off, hitting his foot. Marilyn dropped the gun, and appellant slapped her across the face hard enough to send her into the kitchen.

Appellant testified that on one occasion Marilyn was beaten up by some girls in Shafter after she left a store where she had purchased some beer and soft drinks. Appellant testified that he attempted to find a policeman to report the incident but was unable to do so, and instead took Marilyn home.

Regarding the children, appellant admitted hitting the children with a belt but claimed it was smaller than the one the prosecution asserted he used. Appellant also claimed that the time he hit Lindsey with a crutch it was an accident caused by his slipping on a wet patio. Appellant denied, however, that he ever caused any bruises or scrapes on the children and also claimed that he loved them as his own.

### DISCUSSION

### PART I

*Error in Giving and Failure to Give Instructions Pertaining to Violation of Section 273a, Subdivision (1)*

Though appellant was charged with two counts of violating section 273a, subdivision (1),[3] and found guilty as charged, the jury was not instructed

---

[3]Section 273a, subdivision (1), provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child

on section 273a, subdivision (1). Instead the jury was instructed pursuant to section 273d in the language of CALJIC No. 9.36[4] (4th ed. 1984 pocket pt.).[5] No objection was made to the giving of CALJIC No. 9.36 or the failure to give an instruction fashioned to meet the requirements of section 273a, subdivision (1). (See *People* v. *Pointer* (1984) 151 Cal.App.3d 1128, 1134, fn. 4 [199 Cal.Rptr. 357].)

It is conceded that sections 273d and 273a, subdivision (1), involve different crimes with different elements and neither is a lesser included offense of the other.

The prosecutor argued the case as if appellant had been charged with violating section 273d.

■ The issue here is whether the trial judge had a *sua sponte* duty to instruct pursuant to section 273a, subdivision (1),[6] and, if he did, whether the failure to do so was prejudicial. We hold he did and it was.

"It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the evidence adduced before the court which are necessary for the jury's proper consideration of the case. [Citations.] At a minimum, it is the court's duty to ensure the jury is adequately instructed on the law governing all elements of the case submitted to it to the extent necessary for a proper determination

to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 4, or 6 years."

[4]The court instructed: "Defendant is charged in (Counts 5 and 6 of) the information, with the commission of the crime of violation of Section 273d of the Penal Code.

"Any person who wilfully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition is guilty of the crime of violation of Section 273d of the Penal Code.

"A traumatic condition is a condition of the body, such as a wound or external condition, whether of a minor or a serious nature, caused by a physical force.

"Corporal punishment is punishment administered to the body.

"In order to prove the commission of such crime, each of the following elements must be proved:

"1. That a person intentionally inflicted cruel or inhuman punishment or injury upon the body of a child, and

"2. That the infliction of such punishment or injury resulted in a traumatic condition."

[5]Unless otherwise noted, all CALJIC jury instructions are from the Fourth Edition, 1979, or the Fourth Edition, 1984 pocket part.

[6]Had the trial judge given instructions on both section 273a, subdivision (1), and section 273d, we would have a different issue with which we are not confronted on this record.

in conformity with the applicable law. [Citation.]" (*People* v. *Iverson* (1972) 26 Cal.App.3d 598, 604-605 [102 Cal.Rptr. 913].)

"It is fundamental that a trial judge has a *sua sponte* duty to instruct the jury on all of the essential elements of the offense actually charged. [Citations.] The failure to instruct on an essential element of the offense actually charged is error whenever there is any evidence deserving of any consideration from which the jury could have found in favor of the defendant on the omitted element; because such an error is a denial of the defendant's constitutional right to have the jury determine every material issue presented by the evidence, regardless of how overwhelming the evidence of guilt may be, the error cannot be cured by weighing the evidence and finding that it is not reasonably probable that a correctly instructed jury would have reached a result more favorable to the defendant. [Citations.]" (*People* v. *Hamilton* (1978) 80 Cal.App.3d 124, 133 [145 Cal.Rptr. 429].)

Here, not only was appellant charged with a violation of section 273a, subdivision (1), there was ample evidence to invoke the court's *sua sponte* duty to give an instruction "on all of the essential elements" of section 273a, subdivision (1). Because the jury was not instructed on the general principles of law pertaining to the charge, the jury did not have the correct legal guidelines to properly find appellant guilty of that offense.

The error was prejudicial per se. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730-731 [31 Cal.Rptr. 225, 382 P.2d 33].) Accordingly, the convictions of two counts of child abuse must be reversed.

■ Appellant claims a second error pertaining to his conviction of violating section 273a, subdivision (1), in the court's failure to define the word "willfully," which appears in the statute.[7] Because the two counts of child abuse will be reversed on other grounds, we need not determine if the failure to define the word "willfully" was reversible error. However, for the benefit of counsel and the court, we note this court has held that the word "willfully" as used in section 273a, subdivision (1), should be defined for the jury. (See *People* v. *Peabody* (1975) 46 Cal.App.3d 43, 49 [119 Cal.Rptr. 780].)

---

[7]Interestingly, section 273d also contains the word "willfully."

The definition of "willfully" appearing in CALJIC No. 1.20 is an acceptable definition.[8] *(People v. Pointer, supra,* 151 Cal.App.3d 1128, 1134; *People v. Northrop* (1982) 132 Cal.App.3d 1027, 1038-1039 [182 Cal.Rptr. 197].)[9]

## PART II*

. . . . . . . . . . . . . . . . . . . . . . . . .

## PART III

*Failure to Instruct on Lesser Included Offense of Misdemeanor Child Abuse*

Section 273a, subdivision (2), defines misdemeanor child abuse.[10] CALJIC No. 16.170 is an appropriate instruction to be given to the jury if misdemeanor child abuse is charged or is a lesser included offense within section 273a, subdivision (1).[11]

---

[8]CALJIC No. 1.20 states: "The word 'willfully,' when applied to the intent with which an act is done or omitted and as used in my instructions, implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage."

[9]Appellant also argues that CALJIC No. 16.173 which defines "willfully" in connection with child abuse cases, as opposed to CALJIC No. 1.20 which contains a general definition of "willfully," should be used to define "willfully" for the jury. The Attorney General, however, correctly points out that *People v. Pointer, supra,* 151 Cal.App.3d 1128, 1134, and *People v. Northrup, supra,* 132 Cal.App.3d 1027, 1038-1039, indicate that CALJIC No. 1.20 is an acceptable instruction on the meaning of "willful" in cases involving section 273a. In addition, an examination of the case which resulted in the adoption of CALJIC No. 16.173, *People v. Beaugez* (1965) 232 Cal.App.2d 650, 657-658 [43 Cal.Rptr. 28], and *People v. Pointer, supra,* 151 Cal.App.3d at page 1134, reveals that both instructions are derived from the same source and are intended to produce the same result, i.e., when the word "willfully" is used in a statute it implies a general intent crime and not a specific intent crime.

CALJIC No. 16.173 states: "The word 'willfully' as used in the foregoing instructions means 'with knowledge of consequences' or 'purposeful'."

*See footnote on page 158, *ante.*

[10]Section 273a, subdivision (2), provides: "(2) Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health may be endangered, is guilty of a misdemeanor."

[11]CALJIC No. 16.170 provides: "Any person who wilfully causes or permits any child to suffer, or inflicts on any child unjustifiable physical pain or mental suffering is guilty of a misdemeanor."

The use note to CALJIC No. 16.170 reads as follows: "If this instruction is used as a lesser and included offense in a felony prosecution under Penal Code, § 273a [subdivision] (1), there should be added after 'who' in the first line the following: 'under circumstances or conditions other than those likely to produce great bodily harm or death,'."

Because the two counts of child abuse are being reversed on other grounds, we need not discuss this issue but do so only for the guidance of the trial court in the event of retrial.

■ Respondent properly concedes that misdemeanor child abuse (§ 273a, subd. (2)) is a lesser included offense of felony child abuse (§ 273a, subd. (1)). The trial court has a *sua sponte* obligation to instruct on those principles closely and openly associated with the facts before the court and which are necessary for the jury's understanding of the case. Therefore, the trial court must instruct the jury on all lesser included offenses when the evidence raises a question as to whether or not all of the elements of the charged offense were present but not when there is no evidence that the offense was less than that charged. (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 715.)

Respondent concedes that there is some evidence which could possibly support this instruction but claims that other evidence vitiates the need to give the instruction.

In the instant case, both counts of child abuse (counts five and six) allege that the abuse occurred sometime between January 1, 1982, and September 15, 1982. Count five alleges that R. D. was abused, and count six alleges that Lindsey was abused.

Evidence was presented concerning several different incidents of abuse regarding R. D. For example, Marilyn testified that she would often come home from work and find R. D. bruised. Marilyn also testified that appellant used a wide belt or an arm from a chair to spank R. D. When R. D. refused to swallow his food, appellant would try to cram it down his throat by sticking his finger in R. D.'s mouth. When this failed, R. D. would be forced into a cold shower for 15 or 20 minutes or, on one occasion, slapped across the face with a wet washcloth.

Regarding Lindsey, there was evidence that Marilyn would occasionally find Lindsey in a bruised condition upon returning from work. In addition, Lindsey testified that she was often spanked with a belt. Moreover, on one occasion, appellant hit Lindsey on the head with a crutch, causing a cut which bled and left a small scar.

Testifying on his own behalf, appellant denied that he ever caused bruises or scrapes on the children. Appellant did admit spanking the children with a belt, but claimed it was a narrow belt and not the wide one the prosecution accused him of using. Regarding the incident when he allegedly hit Lindsey

on the head, appellant claimed that it was an accident that occurred when his crutches slipped on a wet patio.

Thus, appellant's testimony raises the issue of the severity of the beatings and supports his contention that the jury should have been instructed on the lesser included offense of misdemeanor child abuse. (*People* v. *Roman* (1967) 256 Cal.App.2d 656, 661-662 [64 Cal.Rptr. 268].)

However, respondent argues that appellant's testimony amounts to a denial of the serious incidents of abuse involving R. D. and a claim of lack of intent in the incident involving the blow to Lindsey's head with the crutch. Therefore, respondent argues, the instruction did not need to be given in this case because the incidents which were "far more likely to have formed the basis for conviction" were not described by appellant as being less severe, but rather were totally denied or explained in such a way that there was no need to instruct on the lesser included offense.

█ The problem with respondent's argument is that section 273a, subdivisions (1) and (2), involve crimes which can be committed by a continuous course of conduct and need not be based on specific acts. (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299].) █ Therefore, if a defendant denies some act and minimizes the seriousness of others, and the jury believes him, the jury could find that the "continuous course of conduct" amounts to a misdemeanor and not a felony. This is what occurred here; the defendant denied or minimized most of the acts the prosecution presented evidence about. Thus, if the jury believed him, they could have found him guilty of a misdemeanor had the proper instruction been given.

### PART IV*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment of conviction of counts five and six is reversed; the judgment is otherwise affirmed.

Woolpert, J., and Hamlin, J., concurred.

On June 11, 1985, the opinion was modified to read as printed above.

---

*See footnote on page 158, *ante.*