751 P.2d 975

**The STATE of Arizona, Appellee,**

v.

**Franklin C. PALMER, Appellant.**

**No. 2 CA–CR 4720–2.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 27, 1987.

Review Denied April 12, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and John B. Barkley, Phoenix, for appellee.

Stanfield & McCarville, P.C. by Stephen R. Cooper and Garye L. Vasquez, Casa Grande, for appellant.

OPINION

HOWARD, Presiding Judge.

Appellant was found guilty by a jury of promoting prison contraband, a class 5 felony. He admitted his prior convictions and the trial court sentenced him to the presumptive term of 5 years' imprisonment, the sentence to be served consecutively to that he was already serving. The contra-

band consisted of a shotgun shell which had been removed from appellant's rectum.

On appeal, appellant asserts that the shotgun shell constituted the fruit of an illegal and unreasonable search and seizure and that the trial court erred by denying his motion to suppress. He additionally argues that the place and circumstances of the digital searches which preceded the forced extraction of the shotgun shell from his rectum constituted cruel and unusual punishment. We affirm.

Appellant is an inmate at the Arizona State Prison in Florence. The testimony at the evidentiary hearing on appellant's motion to suppress revealed that after intelligence personnel at the prison became aware of explosive contraband in Cell Block Six, the prison administrator was contacted and the intelligence officer received permission to conduct body searches of specific inmates. All 12 inmates, including appellant, in appellant's "pod" of Cell Block Six were to undergo body cavity searches. The intelligence officer testified that he authorized an initial digital rectal search and, if that search revealed the presence of an object, the inmate would be x-rayed. Finally, if the inmate did not voluntarily give up or excrete the object, it would be removed. An initial digital rectal search was performed on appellant by a correctional medical assistant. Appellant was then escorted to a medical examining room where a medical doctor performed a second digital search. During the search, the doctor felt the presence of an object and ordered an x-ray of appellant's pelvic area. The x-ray revealed the presence of a foreign object believed to be a shotgun shell.

Following the x-ray, appellant was transported to the central unit hospital's emergency room. A second doctor, trained in sigmoidoscopy examinations, first performed a rectal examination which consisted of the insertion of a small scope to determine the nature of the foreign object. Appellant refused to submit to that examination and, eventually, was forced to lay on the table by corrections officers. Appellant finally agreed to position himself on the table so that the item could be removed, and the doctor removed the shotgun shell which had been wrapped in tissue paper and a condom. During the procedure, appellant testified that he suffered severe pain and discomfort and, following the removal, he suffered some bleeding.

Searches of other inmates revealed balloons filled with gunpowder and a detonator cord, and subsequent searches led to the discovery of blasting caps and a homemade zip gun capable of shooting a shotgun shell. Other inmates had consented to voluntarily pass or remove the contraband they possessed. One other inmate, who did not immediately excrete his contraband, was placed in an isolation cell and eventually passed a balloon filled with gunpowder.

■ Appellant complains of the initial digital rectal search, claiming that it was not done in private and that 25 to 30 officers, as well as someone with a video camera, witnessed the search. He also testified that he was not afforded the option to voluntarily pass the contraband, but rather, was subjected to forced removal as an example to persuade the other inmates to volunteer.

Corrections officers testified that the first digital rectal search took place in an area which was not readily visible to other inmates or to persons other than the necessary security personnel. We will not disturb the trial court's ruling on a motion to suppress evidence absent clear error. *State v. Wright*, 125 Ariz. 36, 607 P.2d 19 (App.1979). Following the evidentiary hearing, it is for the trial court to resolve any factual conflicts in the evidence. *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976), *overruled on other grounds*, *State v. Jarzab*, 123 Ariz. 308, 599 P.2d 761 (1979). In denying the motion to suppress, the court implicitly determined that the initial probe was performed in accordance with the testimony of the corrections officers. We find no reason to disturb that determination.

■ Appellant also claims that the manner in which the shell was removed in the emergency room, as well as the refusal of prison personnel to allow him to voluntarily pass it, constituted an unreasonable search

and seizure. Again, it was for the trial court to resolve factual conflicts in the testimony. The testimony was that appellant had refused to voluntarily excrete the item. Appellant alternatively claims that he should have been placed in an isolation cell as was the inmate who possessed the balloon filled with gunpowder. Again, we will not disturb the ruling of the trial court.

"As a prisoner, appellant's Fourth Amendment rights are extremely limited, both because of the legitimate security needs of the prison and his diminished expectations of privacy." *State v. Bishop*, 137 Ariz. 361, 363, 670 P.2d 1185, 1187 (App.1983). Prison officials may subject an inmate to an inspection when there is reasonable cause to believe the inmate may have concealed dangerous items on his person. Here, prison officials determined that inmates in Cell Block Six possessed unquestionably dangerous items capable of producing explosives. Appellant does not question the existence of such reasonable cause, but rather argues that the search itself was unreasonably conducted. He additionally contends that prison policies were violated.

As we stated in *Bishop*, the appellant's "right to have illegally seized evidence suppressed does not arise when prison regulations are violated, but rather when his Fourth Amendment right to be free from unreasonable searches and seizures is violated." *Id.* at 363, 670 P.2d at 1187. Given the dangerous nature of the contraband reportedly possessed by the inmates, appellant's refusal to voluntarily excrete the item, and his physical resistance to the inspection and removal, we do not believe that the actions of the prison officials were unreasonable in this case. "Body cavity searches are neither unreasonable per se under the Fourth Amendment nor violations of due process procedures guaranteed by the Fifth and Fourteenth Amendments." *People v. West*, 170 Cal.App.3d 326, 334, 216 Cal.Rptr. 195, 200 (1985).

Many factors must be considered in determining whether a search is reasonable. They include the crime allegedly being committed, society's interest in punishing the act, and the reliability of the means employed to conduct the search. They also include the strength of law enforcement suspicions that evidence of crime will be revealed, the importance of the evidence sought, and the possibility that the evidence may be recovered by less intrusive means. We note, however, that the reasonableness of a search does not turn solely on the existence of less intrusive means to conduct the search. *See Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). We acknowledge that the search and removal probably resulted in discomfort, pain and humiliation; however, the removal resulted from the method by which appellant chose to hide the contraband and by appellant's refusal to voluntarily pass it. In view of the threat posed by the inmates' possession of explosive contraband and appellant's refusal to voluntarily give up the contraband, officers were not required to place appellant in an isolation cell until he was forced to pass the shotgun shell.

The immediate methods employed in this case were reasonable. There was an important need to preserve internal order and discipline and to maintain security at the prison. The prison officials were justified in authorizing the search. The initial digital rectal search was performed by corrections medical personnel and the ultimate search and removal was performed by a licensed physician using acceptable medical procedures and methods. The evidence regarding the restraint of appellant when he physically resisted the rectal search does not show that unnecessary force was used, nor does the evidence support a conclusion that the removal procedure was unduly harsh or unnecessarily lengthy. In view of all the facts and circumstances surrounding this case, we do not find that the search and seizure violated appellant's Fourth Amendment rights.

█ Additionally, we do not agree with appellant that the removal of the shotgun shell constituted cruel and unusual punishment under the Eighth Amendment. As we have stated, the government has a legitimate interest in performing such searches

**318**

to prevent the introduction of contraband into the prison. There is no indication that the corrections officials used unnecessary force in accomplishing the search and seizure.

Pursuant to A.R.S. § 13–4035, we have conducted an independent review of the entire record. Finding no fundamental error, we affirm the judgment of conviction and the sentence imposed.

LACAGNINA, C.J., and HATHAWAY, J., concur.