854

THE PEOPLE, Plaintiff and Appellant, v. THOMAS
FUENTES, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, Evelle J. Younger, District Attor-
ney, Harry Wood and Robert J. Lord, Deputy District Attor-
neys, for Plaintiff and Appellant.

Charles M. Berg for Defendant and Respondent.

FOURT, J.—This is an appeal from an order granting a
motion under the provisions of section 1538.5 of the Penal
Code and the granting of a motion to dismiss the cause (as to
count I).

In an information filed in Los Angeles on July 16, 1968,
defendant was charged in count I with possessing a narcotic
on June 22, 1968, and in count II with assault with a deadly
weapon upon the body of Geraldine Wagoner on June 22,

1968. Defendant made a motion under section 1538.5 of the Penal Code as to count I. The motion was heard and granted and the cause as to count I was dismissed. A timely notice of appeal was filed.

A résumé of some of the testimony or inferences therefrom as elicited from the transcript is as follows: Geraldine Wagoner was on or about June 22, 1968, at about 2 p.m. at or near Fairmont and Central Streets in Los Angeles. The defendant and two companions drove up to where Miss Wagoner was standing, stopped their car and the driver of that car and defendant got out of it. Defendant had a tire iron in his hand and struck Miss Wagoner on the arm, hand and back with the tire iron and knocked her down. Steve Jerrell, the driver of the car, also struck Miss Wagoner with his fist and "busted" her mouth. Defendant stated to Miss Wagoner that she had "put [the] snitch on one of his runners and that's why" she was "getting beat up." Miss Wagoner was hospitalized and X-rayed extensively.

Miss Wagoner made a report of the episode to the police and after finding out the name and address of defendant she gave that information to the police.

Officer Del Rosario at about 9:25 a.m., June 25, 1968, received information from Officer Suter that the latter had a signed crime report wherein defendant was named as an "ADW" (assault with a deadly weapon) suspect, giving the address of the suspect. Officer Del Rosario and Officer Olson of the Narcotics Division of the Los Angeles Police Department and other officers went to 1000 Cypress, Apartment No. 5, in the Highland Park Area where defendant was supposed to reside. The defendant was adequately and in a substantially correct manner described in the crime report. Officer Del Rosario knocked on defendant's apartment door and defendant opened the door and said "Come on in." The officers were identified as policemen. Defendant was asked if his name was Thomas Fuentes and defendant replied that it was. Defendant was advised that he was under arrest for an assault with a deadly weapon. Defendant further was fully advised of all of his constitutional rights. Mention was made in the presence of defendant that the offense had been committed with a tire iron and inquiry apparently was made of defendant as to where the tire iron was. Sergeant Suter directed the attention of Olson, shortly after entering into the apartment and before any search was started for the tire iron, to two partially burned hand-rolled cigarettes leaving green

leafy material in an ash tray in open view. The leafy material was marijuana. Olson then at the direction of Suter started to make a search of the apartment for the tire iron. The search thereafter uncovered a shoe box in the kitchen area which contained marijuana.

Defendant made the motion to suppress the evidence under the provision of section 1538.5 of the Penal Code. After the argument of counsel a colloquy occurred between the judge and counsel as follows:

"THE COURT: Did the shoe box have a lid on it?

"MR. FINNELL: [Deputy District Attorney] I believe it is not clear, but I assume it did. That part escapes me.

"THE COURT: Did the officer think a tire iron would be in a shoe box?

"MR. FINNELL: I think he found the marijuana in open view first, and, then—

"THE COURT: He was conducting a search for more marijuana?

"MR. FINNELL: I think so. Yes, sir.

"THE COURT: Shall I grant the motion?"
(defense counsel then argued that a tire iron could not have been in a shoe box—that legally the search could not have been broadened to any room other than the room where the officers found the defendant and where it was "unlikely and highly improbable that they will [would] find what they are looking for.").

"THE COURT: Do you want to be heard?

"MR. FINNELL: I only feel that when an officer makes a lawful arrest, he is entitled to search for that which he feels is reasonably connected with the tools of that crime. Therefore, when he entered and began his search looking around, so to speak, and finds—

"THE COURT: What would he expect to find in an ash tray?

"MR. FINNELL: When he sees two partially smoked marijuana cigarettes.

"THE COURT: Without a closer inspection of the nature of the cigarettes, how can you tell whether they are marijuana cigarettes or other cigarettes?

"MR. FINNELL: Well, this person was a narcotic officer as outlined in the transcript.

"THE COURT: Did he have some reason to believe that the man was using narcotics in addition to this other crime?

"MR. FINNELL: Yes.

"THE COURT: He obviously was using this as a means of investigation for something else. . . .

"THE COURT: The motion will be granted. The Information in Count I will be ordered dismissed. He will be arraigned on Count II. The matter will be sent back to Department 100.

"I take it it was sent to this Department only for the 1538.5?"

In this case there can be not the slightest question that the officers, when they were in the apartment, had the right to be where they were. The evidence shows clearly and it is uncontradicted that the officers reasonably believed in good faith that they had the consent of an authorized person to enter the apartment of defendant. In short defendant said "Come on in" and that was enough. There was no trickery, stealth or subterfuge upon the part of the officers in this case. As stated in *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721], ". . . in the course of conducting a reasonable search they did not have to blind themselves to what was in plain sight simply because it was disconnected with the purpose for which they entered." In this case the record is clear that the officers spotted the marijuana cigarette butts in an ash tray in plain view before any search for the tire iron started. The officers could therefore legitimately and properly look for marijuana in the immediate apartment facility.

The trial judge stated that the officers were "using this as a means of investigation for something else." The statement on its face is entirely unwarranted for as the preliminary transcript sets forth the defendant told his victim at the time of the beating that she was being beaten because she had "put snitch on one of his runners . . ." This would indicate at the least to experienced narcotics police officers that defendant was connected with the narcotics traffic and that it might be possible that some contraband narcotic might be in plain sight in the apartment. Officers should not be penalized for keeping their eyes open and keeping in mind all of the possibilities which might arise under the circumstances and then acting as the officers did in this case.

Respondent seems to argue that even though some of the officers were from the Narcotics Division of the Los Angeles Police Department that they might not have known whether the cigarette butts in the ash tray were of the marijuana variety. It strains credulity to contend that Del Rosario a narcotics officer, two sergeants of detectives, one officer of the Hollenbeck division of detectives, one lieutenant and the

watch commander of Hollenbeck division of detectives (all of whom were present at the time and place of the arrest and search) would not know a marijuana cigarette butt if they saw one.

■ In short in this case the officers immediately after entry into the apartment saw the marijuana cigarette butts which were in the open in an ash tray; they properly seized the cigarette butts; there was no search involved as to those cigarettes. Having come upon this contraband in plain sight it was then proper to make a further search to learn whether there was more of the same narcotic in the apartment.

There was probable cause to arrest for the assault with a deadly weapon and when the marijuana contraband was observed, it was proper to proceed as was done here. ■ A search that is substantially contemporaneous with an arrest may precede the arrest, so long as there is probable cause to arrest at the outset of the search.

The order appealed from is reversed.

Wood, P. J., and Thompson, J., concurred.