[Crim. No. 26443. Second Dist., Div. Two. Apr. 28, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DELFINO ARCHULETA, Defendant and Appellant.

**COUNSEL**

Cadoo, Tretheway, McGinn & Morgan and Gerald W. Newhouse for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Susanne C. Wylie and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—Defendant appeals from a judgment of conviction for violating section 11350 of the Health and Safety Code (possession of a controlled substance-LSD). Defendant pleaded nolo contendere after the superior court had denied his motion, made pursuant to Penal Code section 1538.5, to suppress the use as evidence of the contraband found in his possession.

The hearing under section 1538.5 of the Penal Code was conducted on the basis of a stipulated set of facts. Those facts were as follows:

On September 11, 1974, at about 2:20 a.m., a police officer stopped defendant who was driving his vehicle in an erratic manner. There were

two male occupants in the vehicle with defendant. The officer, after determining that the defendant was not under the influence of alcohol, ran a warrant check over the police radio. The officer received back information of the existence of two outstanding traffic warrants for the defendant's arrest. The aggregate bail on the two warrants was $307. The officer advised defendant of the amount of the bail, placed him under arrest and transported him to the police station for the purpose of posting bail. At the station defendant was asked if he had the money to post the bail, and he replied that he did not. The officer then began the booking process, during the course of which he searched the defendant. It was this search that produced the evidence which formed the basis of the charge against defendant. During the booking search it was also discovered that the defendant had between $200 and $220 in his possession.

■ The law in California governing the authority of a police officer to search an arrestee has developed a special set of standards which apply to the search of persons arrested for violation of the traffic laws. The starting point of our analysis is that generally speaking a person arrested for a traffic offense may not be subjected to a search of his person or his vehicle. (*People* v. *Superior Court (Kiefer)* 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Superior Court (Simon)* 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].) Of course, *Kiefer* and *Simon* both dealt with searches in the field of persons arrested, without a warrant, for traffic violations. It was pointed out in *Simon* that the statutory scheme for the processing of traffic offenders envisions that most traffic violators will be released upon their written promise to appear and will not be physically arrested. Under certain circumstances an officer is authorized to make a physical arrest of a traffic offender for the purpose of transporting him before a magistrate. In that situation the law still envisions that the defendant is to be taken before a magistrate for the purpose of making bail without being subjected to a full blown arrest, booking and jailing.

However, "When a suspect has been lawfully arrested on a criminal charge and undergoes the process of 'booking' at a police station prior to being held in jail, . . . it is ordinarily reasonable to conduct a search of his person for the purpose of preventing the introduction of weapons or contraband into the jail facility. [Citations.]" (*Simon, supra,* at p. 208.) This rule applies to all arrestees whether they be traffic violators or persons charged with other crimes. Thus the right to search a person arrested for a traffic offense does arise but only at the time that he is to be booked and confined in a jail facility.

It was recognized in *Simon, supra,* that an officer having made a warrantless arrest for a traffic violation and having, under permissible circumstances, transported the arrestee to appear before a magistrate for the posting of bail, could if the arrestee was not released on his own recognizance or was unable to post the required bail, conduct a full search of the person of the arrestee in the course of booking him into the jail. The necessary condition precedent to such booking and search is an opportunity to first post bail.

While the processing of a person who is arrested on a warrant is governed by the provisions of Penal Code sections 814-829, 1427 rather than the provisions of the Vehicle Code, where the warrant is for a violation of traffic laws, the arrestee must first be given an opportunity to post the bail fixed on the warrant before he may be subjected to booking and jailing and a search incident thereto. (*People* v. *Collin,* 35 Cal.App.3d 416 [110 Cal.Rptr. 869]; *Carpio* v. *Superior Court,* 19 Cal.App.3d 790 [97 Cal.Rptr. 186].)

However, as was stated in *People* v. *Collin,* at page 424: "[W]hen [a person arrested on a traffic violation] has been given that opportunity and it appears that he cannot post bail he then may be booked and searched since, in the absence of bail, he must be placed in the jail pursuant to the warrant. . . . [I]f the police are justified in jailing a defendant they are entitled to 'book' him and to conduct a search of his person for the purpose of preventing the introduction of weapons or contraband into the jail facility."

Defendant here contends that he was not given an opportunity to post bail since he was unaware, and the officer did not advise him, of the fact that he could post a bail bond, the premium for which would have been considerably less than the amount of the bail and less than the money he had in his possession. The contention is that had he known that he had the privilege of making a phone call to either a bail bondsman or a friend who could produce additional cash, he would have done so. Thus he contends that it was incumbent on the police officer to advise him of the alternatives available to him.

In *Carpio, supra,* there was no evidence that defendant had been advised of the right to make even cash bail. Even though the court stated that there was no reason to assume that the defendant in that case would not have been able to post a required bail bond had he been given the opportunity to do so, we assume from the language of the opinion that defendant there was provided with no opportunity whatsoever to post bail. In a footnote in *Carpio* it is indicated that the defendant had $50 in

cash on his person. We are not told by that opinion the amount of bail that had been set on the warrant but in that same footnote it is suggested that the $50 was more than enough to cover a potential bond *premium.*

In *Collin, supra,* it was determined that the defendant had been given a reasonable opportunity to post bail by being advised of the amount of bail and asked if he was able to post it. The court in *Collin* alluded to the fact that defendant at no time expressed any desire to call or contact anyone for the purpose of arranging bail.

In the case at bar the officer was entitled to accept defendant's statement that he could not post bail as an indication that he was in fact unable to do so and did not intend to make any effort in that regard.

Providing defendant Archuleta a reasonable opportunity to make bail did not require that the officer advise him of all the options available. ■ Beyond that the question arises as to whether, when the arrestee expresses a desire to call for a bondsman or other person to arrange for bail, the booking process must await the arrival of such person.

In *People* v. *Superior Court (Simon) supra,* 7 Cal.3d 186, at pages 214, 215, the chief justice stated in a separate concurring opinion: "If . . . defendant had not been searched at the scene of the arrest but had been taken to a magistrate and was *unable to meet bail requirements within a relatively short period, police officers would have to detain him until bail money or a bond could be posted. Clearly in such a situation the police would be entitled to make a full search of defendant at that point in time prior to detaining him further. It would be an unreasonable burden to require law enforcement officers to segregate the person detained in some remote area of the custodial facilities removed from the jail population or assign an officer to watch over the arrestee until the required bail is posted which may be hours or days later."* (Italics added.) The chief justice concluded that in such a situation the safety of those detaining him and the prevention of the introduction of contraband into the custodial facility require that the person be subjected to a full search.

This rationale suggests that if the arrestee is unable to post cash bail at the time of his being advised of the amount of bail required, the police are not then required to await the arrival of a bail bondsman or other person before confining the arrestee in a jail facility. It is a matter of common knowledge that merely having the ability to pay the premium for a bail bond *does not* guarantee that a bond will in fact be posted.

Necessarily the arrestee will be detained pending the arrangement for the posting of bail by a person who is not at the time physically present at the police facility. During that period, as the chief justice points out, it would be unreasonable to require special handling or segregation of the arrestee.

It would create more problems than it would solve for this court or any court to try to specify with more exactness than what the chief justice describes as a "relatively short period," the time to which an arrestee is entitled to delay the formal detention process for the purpose of arranging bail.

It needs no citation of authority to observe that the test of the validity of any search of a person is the reasonableness of the police conduct in light of the circumstances as they reasonably appeared to the police officer at the time he was required to act. If the officer's conduct was reasonable the fact that, on hindsight, the actual state of affairs differs from that which might have appeared from the circumstances, does not render a search invalid. (For example see *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721].)

Here the defendant was advised in the presence of his companions in the field of the amount of the bail required. At the station he was again told the amount of bail and asked if he had the money to post it. When the defendant replied in the negative, the officer had no reason to believe that the defendant had any money in his possession or the ability to obtain it. The defendant did not volunteer that he was carrying a substantial sum of money and there were no facts from which the officer could infer that the defendant would be able to post the bail within a "relatively short period" of time. It was not unreasonable for the officer to commence the booking procedure which would include divesting the defendant of items of personal property in his possession.

The trial court correctly concluded that under the facts presented defendant was given a reasonable opportunity to post bail.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.