Filed 10/16/15  P. v. Hernandez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD HERNANDEZ,<br><br>    Defendant and Appellant. | C078339<br><br>(Super. Ct. No. 14F07013) |

After the trial court denied defendant Richard Hernandez's motion to suppress evidence (Pen. Code, § 1538.5), defendant pleaded no contest to manufacturing concentrated cannabis (Health & Saf. Code, § 11379.6, subd. (a)) in return for the dismissal of a charge of possession of marijuana for sale (Health & Saf. Code, § 11359) and a sentence of five years of formal probation, with one year in county jail as a condition.  Defendant timely appealed.

On appeal, defendant contends the trial court erred when it found that the community caretaking exception to the warrant requirement legally justified the

1

warrantless entry into his residence.  We agree and reverse the trial court's denial of defendant's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

At the preliminary hearing on December 10, 2014, Sacramento County Sheriff's Detective Erik Hobbs testified that on October 4, 2014, at approximately 1:40 a.m., he contacted defendant at defendant's residence in an apartment complex on Oak Hollow Drive.  A search of defendant's apartment revealed approximately one ounce of concentrated cannabis (honey oil) on Pyrex dishes on the stove in the kitchen and on the countertop, 67 full cans of butane in a hallway closet, 12 empty cans of butane on the balcony, and 3.7 grams of dried marijuana, bud materials, stems, and leaves.  The concentrated cannabis was still viscous and off-gassing butane.  Hobbs did not testify about the circumstances leading up to his contact with defendant.

The trial court (Fiorini, J.) held defendant to answer.

*Motion to Suppress*

On December 18, 2014, defendant filed a motion to suppress all evidence found in his apartment, arguing that the warrantless entry of his apartment (which led to the subsequent search) was without legal justification.  The People's opposition asserted that law enforcement entered defendant's residence due to an "exigent [911] call from a concerned neighbor" and argued exigent circumstances justified the search.

At the hearing on the motion held on January 7, 2015, Sacramento County Sheriff's Detective Nathan Traxler testified as follows:

On October 4, 2014, he was dispatched (as a patrol deputy, his former classification) at 9:07 p.m. to an apartment complex on Oak Hollow Drive.  A resident had called, saying "her neighbor's door was found ajar, she called inside and no one answered, and she was worried about the occupants."  The caller said she had shut the door.  The call came in on "911 or our nonemergency number.  I'm not sure which."  Before Traxler was dispatched, "the call had pended for a while.  I don't remember

2

exactly how long." It was a Saturday night, when the Sheriff's Department typically received many service calls; this call did *not* receive as high a priority as "[c]alls with an exigency, maybe a suspect on scene or some in-progress crime" but instead went "into a cue."

Traxler was familiar with that particular apartment complex as the Sheriff's Department often responded to calls regarding crimes there. Traxler was not familiar with apartment number 198, the unit to which he was dispatched, and had no information about any recent or ongoing criminal activity or anything else specific to that unit. When Traxler arrived at the complex, he saw that unit 198 was dark. He walked up the stairs to the unit and found the door closed. He knocked on the door, tried to open it, found it unlocked, announced himself in a loud voice as a sheriff's deputy coming to check on anyone inside, and entered.

Traxler testified that he tried to open the door because he knew that "commonly where there is either some sort of medical emergency or some crime has occurred, such as a burglary, home invasion robbery, doors are often left open, used as a means of escape." He was concerned "that there was someone inside, that they were injured, there was some problem or maybe the home had been burglarized, and I needed to check and make sure that everyone was okay." He acknowledged that he did not hear anything that would indicate someone was in distress, and he did not see anything that suggested a recent burglary. He did not attempt to speak to the neighbor who had called the department, any other neighbors, or building management.

Traxler searched by flashlight for anyone who was injured or present in the apartment. While searching, he noticed a substance that appeared to be honey oil in the kitchen on the stovetop and the countertop. He also saw marijuana. He searched the entire apartment looking for injured persons, but found no one in the unit. He closed the front door and left the apartment. After moving his car closer, he called for narcotics

3

detectives. He then saw a man (later identified as defendant) walking across the parking lot and starting up the stairs toward unit 198. The search of unit 198 followed.

At the hearing, the prosecutor--apparently trying to argue exigent circumstances justified the warrantless entry and search--asserted Traxler's entry was lawful because, given the neighbor's phone call coupled with Traxler's knowledge of the high crime rate in the complex, it was objectively reasonable for Traxler to open the apartment door to check on the safety of anyone who might have been inside. The prosecutor concluded: "[I]t would be almost negligent for [Traxler] to walk away after receiving a phone call from a neighbor who was concerned about someone being hurt in that apartment. So we believe his conduct was reasonable."

Defense counsel--construing the prosecutor's argument to apply the community caretaking exception to the warrant requirement (see *People v. Ray* (1999) 21 Cal.4th 464 (*Ray*))--countered that Traxler did not have specific, articulable facts leading him to think someone on the premises was in distress and in need of emergency assistance such that the exception applied. The neighbor's call reported only that she saw the door open and closed it. The call was not treated as high priority. When Traxler arrived, he saw no evidence of any crime in progress or recently committed, nor did he hear any evidence of someone in distress. It was not enough that unit 198 was in a high crime complex and area; Traxler had no specific information pertaining to unit 198 and did not try to get more information from the caller or anyone else when he arrived. "Just because somebody is a concerned neighbor does not supply significant [articulable] facts to enter that home."

The trial court (Perkins, J.) denied defendant's motion to suppress, deeming it a "very close question" but finding that the community caretaking exception to the warrant requirement applied. The court specifically referenced: "the call by a neighbor, the door being viewed open by the neighbor and the neighbor having closed the door," finding that "it was reasonable for the officer to attempt to make an entry." The court added after

4

ruling that "there were no specific facts about any particular person in distress, nor anything specific about this apartment, other than it's a high-crime area, there is a door open. But that is not . . . indicative of a burglary or not. So it comes down to those bare facts."

**DISCUSSION**

Defendant contends the evidence was insufficient to justify the entry into his residence based on the community caretaking exception (or any exception) to the warrant requirement. The People counter that "Deputy Traxler faced a caretaking solution that needed resolution." Defendant has the better argument.

On review of a ruling denying a motion to suppress evidence, we view the facts most favorably to the respondent and uphold the trial court's factual findings if supported by substantial evidence. (*People v. Woods* (1999) 21 Cal.4th 668, 673; *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1409.) We decide independently whether the search or seizure was reasonable under the Fourteenth Amendment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

Here, there is no dispute as to the facts. We therefore turn to the applicable law.

In *Ray,* our Supreme Court defined the community caretaking exception to the Fourth Amendment's warrant requirement. Our high court held that this exception, like the narrower "emergency aid" exception, is "a distinctly different principle of Fourth Amendment jurisprudence" from "exigent circumstances." " 'When the police act pursuant to the exigent circumstances exception, they are searching for evidence or perpetrators of a crime. . . . In contrast, the community caretaker exception is only invoked when the police are not engaged in crime-solving activities. [Citations.]' "

5

(*Ray, supra*, 21 Cal.4th at p. 471 (lead opn. of Brown, J.).)[1] "Upon entering a dwelling, officers view the occupant as a potential victim, not as a potential suspect." (*Ibid*.)

In modern times, law enforcement " 'should and do regularly respond to requests of friends and relatives and others for assistance when people are concerned about the health, safety or welfare of their friend, loved one or others.' [Citation.]" (*Ray, supra*, 21 Cal.4th at p. 472.)

"Courts refer to these diverse police duties and responsibilities collectively as 'community caretaking functions.' [Citations.]" (*Ray, supra*, 21 Cal.4th at p. 472.) Under this exception to the warrant requirement, "circumstances short of a perceived emergency may justify a warrantless entry, including the protection of property, as 'where the police reasonably believe that the premises have recently been or are being burglarized.' [Citation.]" (*Id.* at p. 473.)

"The appropriate standard under the community caretaking exception is one of reasonableness: Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge of his or her community caretaking functions? Which is not to say that every open door--even in an urban environment--will justify a warrantless entry to conduct further inquiry. Rather, as in other contexts, 'in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or "hunches," but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary.' [Citation.]" (*Ray, supra,* 21 Cal.4th at pp. 476-477.)

---

[1] The lead opinion, signed by three justices, affirmed the judgment of the Court of Appeal that the officers' entry was proper under the community caretaking exception. (*Ray, supra*, 21 Cal.4th at p. 480.) A separate three-justice concurrence would have held the officers' entry was lawful based on exigent circumstances and stated no view as to the community caretaking exception. (*Id*. at pp. 480-482 (conc. opn. of George, C.J.).)

In *Ray*, our Supreme Court held that the community caretaking exception justified the warrantless entry into the defendant's residence. There, the officers went to the defendant's apartment on Christmas Day in response to a neighbor's report that the front door had been " 'open all day and it's all a shambles inside.' " (*Ray, supra*, 21 Cal.4th at p. 468.) When the officers arrived, they "found the scene as described, which in light of their training and experience justifiably aroused concern for the welfare of persons inside and the possibility of a burglary in progress." (*Id.* at p. 478.) "While the facts known to the officers may not have established exigent circumstances or the apparent need to render emergency aid, they warranted further inquiry to resolve the possibility someone inside required assistance or property needed protection." (*Ibid.*) No one responded to repeated knock-notice. (*Ibid.*) The fact that the officers did not take other steps before entering, such as contacting the reporter, checking the back of the residence, or determining whether the defendant's vehicles were in the carport, did not decide the case: "[T]heir failure to take additional action must be viewed in the totality of the circumstances to determine the ultimate reasonableness of their intrusion." (*Ibid.*) The observations they made through the open door--"an interior that appeared 'ransacked' and unattended by any occupant, or perhaps worse, an injured occupant" (*id.* at p. 479)-- were enough to prompt a reasonable officer to resolve the uncertainty immediately. (*Ibid.*).

By contrast, in *People v. Madrid* (2008) 168 Cal.App.4th 1050 (*Madrid*), the appellate court found the information known to the officer insufficient to justify a vehicle stop under the community caretaking exception. In *Madrid*, the officer, parked in a marked patrol car at a crowded shopping center, saw a man walking unsteadily and sweating, then stumbling and holding onto a shopping cart to break his fall; the officer thought he might be ill, an assault victim, or under the influence of alcohol or drugs. The man walked about 50 feet to a parked Toyota and entered on the passenger side. When the Toyota started to move, the officer blocked it with his car, and then approached the

Toyota to check on the passenger's well-being, eventually searching the car's occupants and finding contraband. (*Id.* at pp. 1053-1054.)

Applying the *Ray* requirement for reasonableness to these facts, the *Madrid* court held that "[t]he stop of appellant's vehicle fail[ed] the reasonableness test." (*Madrid, supra*, 168 Cal.App.4th at p. 1059.) The *Madrid* court noted that " 'reasonableness "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers,' " [citation].' (*Maryland v. Wilson* (1997) 519 U.S. 408, 412 [137 L.Ed.2d 41].)" (*Id*. at p. 1058) Citing *Ray*, it emphasized that "[i]n engaging in this weighing process, courts must act as vigilant gatekeepers to ensure that the community caretaking exception does not consume the warrant requirement." (*Ibid*.)

The *Madrid* court noted several key facts: the stop was based on the apparent (low level) distress of the *passenger*, not the driver, who might present a danger to the public if ill; the passenger had access to the driver for help and did not appear to need additional aid; and there was no indication that anyone in the car actually *required* the assistance of law enforcement or any indication of danger to anyone. (*Madrid, supra*, 168 Cal.App.4th at pp. 1059-1060.)

Reading *Ray* and *Madrid* together, we conclude that the facts known to Traxler as he stood outside the door of defendant's apartment did not signal danger to the public such that when balanced against law enforcement's significant intrusion through a closed door into the apartment it justified entering pursuant to the community caretaker exception. Unlike in *Ray*, where the neighbor's call communicated that the defendant's door had been open all day, on a holiday, revealing premises in shambles and no one in sight, here the neighbor's call revealed only an open door at an unknown time and for an unknown duration--a door which the neighbor had closed--and no apparent disarray or distress. The day was an ordinary day. The call was merely "in the cue" and was not an emergency. When Traxler arrived, at some point after the initial 9:07 p.m. dispatch, he

8

saw no lights on in the apartment and heard nothing inside. Although the apartment was in a high crime area, he perceived no evidence of any crime or crisis in progress inside unit 198, or even in the vicinity. He had no additional information from neighbors or management. In short, Traxler could not point to specific and articulable facts from which he concluded that his action was necessary, but only to unparticularized suspicions or hunches. (See *Ray, supra*, 21 Cal.4th at p. 477.)

The showing offered to justify his entry was even weaker than that found insufficient in *Madrid*, where the officer *did* observe *someone* who appeared to be in some need of assistance. Traxler did not. Nor did Traxler receive information that defendant was away from his residence--again, on a holiday--as did the investigating officer in *State v. Alexander* (1998) 124 Md.App. 258, cited by our dissenting colleague. In that case, faced with information that the occupants of the house in a neighborhood that was experiencing a rash of burglaries were away for Thanksgiving Day, and finding a *basement* door wide open and a barking dog inside when they arrived at the house, the officers entered. (*Id.* at pp. 262-264) Here, in contrast, there was no appearance of a security breach whatsoever on this ordinary night. The neighbor's call did not indicate that defendant was away, nor state any basis for concern other than a previously open front door which was now closed. There were simply no *facts* here to which Traxler could point to justify entry through a closed door into a dark and quiet apartment at night.

Applying the community caretaking exception to the record in this case would allow the exception to consume the warrant requirement. (See *Madrid, supra*, 168 Cal.App.4th at p. 158.) This we cannot do.

We do not intend to criticize law enforcement officers for conscientiously responding to calls such as the neighbor's call in this case, or for investigating concerns that are based on the officers' training and experience and a nonparticularized sense of danger or something amiss. We merely hold the action at issue here--*entering and walking through defendant's apartment* on the facts presented at the hearing on the

9

motion--did not fall within an exception to the warrant requirement. Accordingly, we reverse the order denying the motion.

## DISPOSITION

The order denying defendant's motion to suppress evidence is reversed, and the trial court is directed to enter a new order granting the motion.


                                                    /s/
                                         DUARTE, J.


I concur:


     /s/
BUTZ, J.

10

Hull, J.

I dissent.

This matter implicates the "community caretaking" exception to the Fourth Amendment requirement that law enforcement officers may legally enter private premises only by obtaining a search warrant. (See generally, 3 LaFave, Search and Seizure, (5th Ed. 2012), § 6.6 *et seq.* (3 LaFave).)

"Preceding sections of this Chapter have been concerned with the entry of private premises by police for the purpose of arresting a person thought to be within or for the purpose of finding the fruits, instrumentalities or evidence of some past crime. Although it is entries for those purposes that most often give rise to a motion to suppress, requiring a ruling upon the validity of the entry and subsequent conduct of the police, quite clearly police have occasion to enter premises without a warrant for a variety of other purposes. The police have 'complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses,' by design or default, the police are also expected to 'reduce the opportunities for the commission of some crimes through preventive patrol and other measures,' 'aid individuals who are in danger of physical harm,' 'assist those who cannot care for themselves,' 'resolve conflict,' 'create and maintain a feeling of security in the community,' and 'provide other services on an emergency basis.' An entry and search of premises purportedly undertaken for such reasons as these may sometimes result in the discovery of evidence of crime, in which case a determination of the lawfulness of such police activity is required." (3 LaFave, *supra*, § 6.6, pp. 595-596, fns. omitted.)

*People v. Ray* (1999) 21 Cal.4th 464 (*Ray*) is the leading California decision recognizing the "community caretaking" function of law enforcement officers and setting forth those circumstances where officers engaged in community caretaking activities may enter private premises without a search warrant.

1

"Under the community caretaking exception, circumstances short of a perceived emergency may justify a warrantless entry, including the protection of property, as 'where the police reasonably believe that the premises have recently been or are being burglarized.' [Citation omitted.] 'Although the case law attaches slightly greater weight to the protection of persons from harm than to the protection of property from theft, many of the cases involving possible burglaries or breakings and enterings stress the dual community caretaking purpose of protecting both. [Citations omitted.]' Of necessity, officers may enter premises to resolve the situation and take further action if they discover a burglary has occurred or their assistance is otherwise required. [Citations omitted.]" (*Ray, supra,* 21 Cal.4th at p. 473.)

"[T]his court . . . has long recognized that '[n]ecessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose. [Citations.]' (*People v. Roberts* (1956) 47 Cal.2d 374, 377.)" (*Ray, supra,* 21 Cal.4th at p. 473.)

"The appropriate standard [to be applied] under the community caretaking exception is one of reasonableness: Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge of his or her community caretaking functions?" (*Ray, supra,* 21 Cal.4th at pp. 476-477.) "Which is not to say that every open door -- even in an urban environment -- will justify a warrantless entry to conduct further inquiry. Rather, as in other contexts, 'in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or "hunches," but to *reasonable inferences which he is entitled to draw from the facts in the light of his experience;* in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary.' [Citation omitted.]" (*Id.* at p. 477; italics added.)

2

The *Ray* court noted that, under the exception, there were "two aspects critical to maintaining the essential constitutional balance. First, the authority granted [the officers] is narrowly delimited by the known facts viewed in the light of the rationale for the exception. 'The privilege to enter to render aid does not, of course, justify a search of the premises for other purposes. [Citation.] To the contrary, the warrantless search of a dwelling must be suitably circumscribed to serve the exigency which prompted it. [Citations.]' [Citation omitted.] 'The officer's post-entry conduct must be carefully limited to achieving the objective which justified the entry -- the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance [or property is at risk] and to provide that assistance [or to protect that property].' [Citation omitted.]

"Second, 'courts must be especially vigilant in guarding against subterfuge, that is, a false reliance upon the [personal safety or] property protection rationale when the real purpose was to seek out evidence of crime.' [Citation omitted.]" (*Ray, supra,* 21 Cal.4th at p. 477.)

Applying these principles to the matter before us, the facts - which are undisputed -- are as follows: At the time of the suppression hearing, Nathan Traxler had been a sheriff's deputy for 11 years. On October 4, 2014, the date of the incident, he was a patrol deputy in the district in which the apartment complex is located and had approximately10 years and nine months experience. Deputies become familiar with the areas they patrol and some of the people who live in them and he was, at the time, familiar with this particular apartment complex.

The complex where apartment 198 was located was well-known to law enforcement. He knew that there was a "fairly high" crime rate there, that the sheriff's department received many calls for service at the complex, and that the complex experienced robberies, shootings and numerous domestic violence calls. He noted that the department "respond[ed] . . . there regularly."

3

A neighbor of the resident or residents of apartment 198 called either 911 or the sheriff's department's nonemergency number at 9:07 p.m. that evening. Traxler's information was that the caller said, "her neighbor's door was found ajar, [the neighbor] called inside and no one answered and she was worried about the occupants." Before entering, Traxler knew that the neighbor was the one who had shut the door.

Traxler did not arrive until sometime after the call came in because it was Saturday night and the department receives many calls for service. Those which indicate an urgent need to respond by the department, such as where there is a suspect at the location the call relates to or there is a crime in progress take first priority.

It was dark when Traxler arrived at the apartment (http://www.timeanddate.com/sun/usa/sacramento?month=10&year=2014 [as of Sept. 23, 2015) and he could see that all the lights were off. He knocked on the door and tried the doorknob and found the door unlocked. Before going into the apartment he saw that it was dark inside. He turned his flashlight on and, in a loud voice, announced that he was with the sheriff's department and that he was coming inside to check on anyone inside. Once inside, he began looking for anyone who was injured or anyone who was in the apartment. He searched the entire apartment including the common areas, the kitchen and the bedrooms to see if anyone needed assistance.

While looking through the apartment he saw, in plain sight, a sticky brown substance on some Pyrex glass containers on the stovetop and some more of that same substance on wax paper on the counter next to the stovetop. He suspected the substance was concentrated cannabis made through the butane honey oil process.

Traxler entered apartment 198 because the neighbor called the sheriff's department and said she found the door open and that she was concerned. Traxler knew that "commonly" when there is some sort of medical emergency or a crime has occurred such as burglary or a home invasion robbery doors are often left open to provide a means

4

of escape. His concern was that there was someone inside who was injured or that there had been a burglary and he wanted to check to make sure everyone was okay.

Traxler was not familiar with apartment 198 itself. Prior to the time he was standing before the door to apartment 198, he had received no information regarding narcotics activity at the apartment or narcotics activity by the defendant. He had received no information regarding gang activity or "abuse" at apartment 198.

The question is whether, under the community caretaking exception to the warrant requirement, Traxler's actions here were reasonable, that is, given the facts known to Traxler and the reasonable inferences he was entitled to draw from those facts in light of his experience, would a prudent and reasonable officer have perceived a need to act as he did in the proper discharge of his or her community caretaking function? I cannot understand how the answer to that question could be anything other than "yes."

This was an incident that began with a call from a concerned neighbor saying that he or she had found the door open to defendant's apartment which he or she closed in an obvious effort to protect the apartment. He or she found the door open and no one responded to his or her call after dark on a Saturday night in an apartment complex known to law enforcement as having a fairly high crime rate including numerous service calls for burglaries, home invasion robberies and domestic violence. Given these facts and Traxler's experience and the reasonable inferences he could draw therefrom, it was entirely reasonable for Traxler to investigate further to insure that there was not a crime in progress or, more importantly, someone inside the apartment who needed his assistance.

Indeed, while I recognize that the following is not precisely a logical obverse of the standard that we must apply and is not the same as the standard itself, I think Traxler could have been considered entirely imprudent and unreasonable as a community caretaker if, under the circumstances known to him, he had simply found the door closed and then turned around and walked away.

5

I note that there was no suggestion in any of this that Traxler went beyond that which was necessary to determine whether someone was in need of assistance or property was at risk or that his entry was a subterfuge or that he was engaging in crime-solving activities.

In *Ray*, the facts were simple and straight-forward. Law enforcement authorities entered a residence where it had been reported that a door to a residence had been open all day and that the residence inside was a "shambles." (*Ray, supra,* 21 Cal.4th at p. 468.) The court upheld the search. There were no facts in *Ray*, insofar as we can tell, to suggest, unlike here, that the residence in *Ray* was located in a high crime area. Except for small and non-consequential factual differences, the situation we have before us here is almost an exact parallel to the fact situation in *Ray* made more compelling by Traxler's knowledge that the apartment was located in a high crime area and the door had been found open and was closed at some point only by a neighbor on a Saturday night when calls for service were numerous.

The majority opinion compares the holding in *People v. Madrid* (2008) 168 Cal.App.4th 1050 (*Madrid*) to the case at bar and decides that the case before us closely resembles *Madrid.* In *Madrid* the court found that the community caretaking exception did not justify a law enforcement officer's blocking and stopping a car in a public parking lot based on an officer's observations that a *passenger* in the car may have been ill. The court arrived at its holding by noting that the officer stopped the car after observing a passenger in the car, as opposed to the driver, in apparent distress, that the passenger exhibited a low level of distress, that the passenger was not alone, having access as he did to assistance from the driver of the car, that nothing suggested that the driver was not able to help the passenger if help was needed, and that the officer's concern that the passenger might be experiencing the effects of a drug overdose was merely speculation. (*Id.* at pp. 1059-1060.)

6

I find the case before us to be nothing like the situation in *Madrid* where the stop was made merely on the observation of an apparently ill person who got into a car with a driver and could offer the passenger assistance if necessary. In *Madrid* there was nothing to suggest that, given the facts, a prudent and reasonable officer would have perceived a need to act in the proper discharge of his or her community caretaking functions where obvious assistance was available to the ill passenger and the officer was merely speculating about a possible drug overdose.

Finally, I note that the California Supreme Court in *Ray* found an appellate court decision in Maryland to be "particularly instructive." (*Ray, supra,* 21 Cal.4th at pp. 474-475.) In *State v. Alexander* (1998) 124 Md.App. 258 (*Alexander*) the Court of Special Appeals of Maryland held that the community caretaking exception to the warrant requirement applied to the search there in question. In *Alexander,* law enforcement officers received a call from a neighbor on Thanksgiving Day saying that the neighbor's basement door was open and the neighbor was away. (*Id*. at p. 262.) A law enforcement officer answered the call and found the basement door "wide open" but saw no signs of forcible entry. Even so, the officer's training and experience suggested a breaking and entering was in progress. (*Id*. at p. 263.) The officer knocked on the front door to announce his presence and could only hear a barking dog. (*Id*. at p. 264.) Given those facts, he, along with a backup officer entered the residence and searched the residence to see if anyone was inside. Once inside, the officers found marijuana in plain view. (*Ibid*.) The court upheld the search as one falling under the community caretaking exception to the warrant requirement. As noted, our Supreme Court in *Ray* found *Alexander* particularly instructive. In the matter before us, so do I.

I would affirm the judgment.


                                                 _____HULL_____, Acting P. J.